IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 23-513
_____

FILED
May 15, 2026
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

TINA MARIE FRYMYER,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Gilmer County
The Honorable Jack Alsop, Judge
Case No. CC-11-2022-F-8

VACATED AND REMANDED WITH DIRECTIONS
_____

Submitted: March 31, 2026
Filed: May 15, 2026

Timothy V. Gentilozzi, Esq.
Gentilozzi & Associates
Clarksburg, West Virginia
Attorney for Petitioner

John B. McCuskey, Esq.
Attorney General
Lara K. Bissett, Esq.
Assistant Attorney General
Spencer J. Davenport, Esq.
Assistant Solicitor General
Charleston, West Virginia
Attorneys for Respondent

JUSTICE EWING delivered the Opinion of the Court.
JUSTICE TRUMP and JUSTICE TITUS dissent and reserve the right to file dissenting opinions.

**SYLLABUS BY THE COURT**

1.      "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review."  Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

2.      "A motion for a new trial on the ground of the misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it appears that defendant was not injured by the misconduct or influence complained of."  Syl. Pt. 6, in part, *State v. Jenner*, 236 W. Va. 406, 780 S.E.2d 762 (2015).

3.      "The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14, of the West Virginia Constitution. A meaningful and effective voir dire of the jury panel is necessary to effectuate that fundamental right."  Syl. Pt. 4, *State v. Peacher*, 167 W. Va. 540, 280 S.E.2d 559 (1981).

4       "'The official purpose[ ] of voir dire is to elicit information which will establish a basis for challenges for cause and to acquire information that will afford the parties an intelligent exercise of peremptory challenges.' Syl. Pt. 2, in part, *Michael v.*

i

*Sabado*, 192 W.Va. 585, 453 S.E.2d 419 (1994)." Syl. Pt. 3, *State ex rel. Nationwide Mut. Ins. Co. v. Karl*, 222 W. Va. 326, 664 S.E.2d 667 (2008).

5.    """"A motion to set aside a verdict and grant a new trial on the ground that a juror subject to challenge for cause was a member of the jury which returned it, must be supported by proof that the juror was disqualified, that movant was diligent in his efforts to ascertain the disqualification and that prejudice or injustice resulted from the fact that said juror participated in finding and returning the verdict. Such facts must be established by proof submitted to the court in support of the motion, and not from evidence adduced before the jury upon the trial." Syl., *Watkins v. The Baltimore and Ohio Railroad Company et al.*, 130 W. Va. 268[, 43 S.E.2d 219 (1947), *overruled on other grounds by* Syl. pt. 3, *Proudfoot v. Dan's Marine Service, Inc.*, 210 W. Va. 498, 558 S.E.2d 298 (2001)].' Syllabus point 2, *State v. Dean*, 134 W. Va. 257, 58 S.E.2d 860 (1950)." Syl. Pt. 5, *Belcher v. Dynamic Energy*, *Inc.*, 240 W. Va. 391, 813 S.E.2d 44 (2018).

6.    "Upon an allegation before a trial court that a juror falsely answered a [m]aterial question on [v]oir dire, and where a request is made for a hearing to determine the truth or falsity of such allegation[,] it is reversible error for the trial court to refuse such hearing." Syl. Pt. 2, *W. Va. Human Rights Comm'n v. Tenpin Lounge, Inc.*, 158 W. Va. 349, 211 S.E.2d 349 (1975).

7.      "If it be determined that a juror falsely answered a question on [v]oir dire examination, whether or not a new trial should be awarded is within the sound discretion of the trial court."  Syl. Pt. 3, *W. Va. Human Rights Comm'n v. Tenpin Lounge, Inc.*, 158 W. Va. 349, 211 S.E.2d 349 (1975).

**EWING, Justice:**

Petitioner Tina Frymyer was convicted of one count of obtaining money by false pretenses.[1] After the jury returned its verdict, she filed a motion to vacate her conviction due to juror misconduct. The petitioner claimed that one of the jurors failed to disclose her relationships with individuals involved in the case that would have disqualified her from serving on the jury. The circuit court held a hearing and allowed the petitioner to question some of the trial witnesses but none of the jurors. By order entered July 25, 2023, the circuit court found that no juror misconduct occurred and sentenced the petitioner to a six-year term of probation.[2]

In this appeal, the petitioner maintains that she was denied a fair trial. Upon review of the parties' briefs[3] and oral arguments, the appendix record, and pertinent authorities, we find that the circuit court abused its discretion by refusing to allow the petitioner to question the juror at issue during the post-trial hearing. Accordingly, we

---

[1] *See* W. Va. Code § 61-3-24(a) (1994) ("If a person obtains from another by any false pretense, token or representation, with intent to defraud, any money, goods or other property which may be the subject of larceny . . . [s]uch person is guilty of larceny.").

[2] The circuit court also ordered the petitioner to make restitution in the amount of $5,670.67, paying a minimum of $200.00 monthly until paid in full; pay the cost of the jury trial; and serve one hundred hours per year of community service for the duration of her probation.

[3] Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

1

vacate the circuit court's order and remand this case for an additional post-trial hearing on the alleged juror misconduct consistent with this opinion.

## I. FACTS AND PROCEDURAL BACKGROUND

By indictment, the petitioner was charged with willfully and fraudulently obtaining more than $5,000 from the State of West Virginia to provide care for a foster child whom she had placed in the custody of another adult, Brandy Sims. The petitioner was convicted of that charge after a one-day jury trial held on February 17, 2023, in the Circuit Court of Gilmer County. Immediately following the trial, the petitioner, by counsel, began to question the impartiality of Juror Carrie Collins.

The day after the trial, the petitioner's counsel sent a letter to the trial judge expressing his belief that Juror Collins had not provided truthful answers during voir dire. Soon after, the petitioner moved to vacate the jury verdict and dismiss the indictment based upon juror misconduct as asserted by her attorney in the letter he sent to the trial judge.[4] The petitioner contended that Juror Collins should have disclosed her relationships with various individuals involved in the case during voir dire. The petitioner argued that because of these relationships, Juror Collins was biased against her and she was denied her right to a fair trial. Specifically, the petitioner asserted that Juror Collins should have

---

[4] Although the petitioner styled her post-trial motion as "Defendant's Motion to Vacate the Jury Verdict and Dismiss the Indictment," the circuit court treated it as a motion to set aside the verdict and for a new trial.

disclosed that her sister is the Circuit Clerk of Gilmer County;[5] that she is closely related to a member of law enforcement because her brother-in-law is a state trooper;[6] and that she is friends with the arresting police officer, the prosecutor, and Brandy Sims. The petitioner also claimed that Juror Collins should have disclosed that she knew witness Jennifer Godfrey, a child protective services worker, and that they had a previous working relationship when they were both employed by the West Virginia Department of Health and Human Resources. The petitioner further asserted that another juror, Jason Stewart, was biased against her, claiming that he is a family friend of Juror Collins and her sister, the circuit clerk. Finally, the petitioner contended that the circuit clerk and the prosecutor were complicit in Juror Collins's misconduct because neither intervened when Juror Collins failed to disclose her relationships with individuals involved in the case, including themselves. In support of her motion, the petitioner submitted copies of various messages that her attorney obtained from Facebook to establish the existence of the alleged relationships.

---

[5] In the letter sent to the trial judge, the petitioner's attorney relayed that at various times during the trial, he observed Juror Collins "covering her face with her hand in an attempt to block my view while she was giggling and mouthing stuff towards the Prosecutor's table where Mr. Hough [the prosecutor], Ms. Starsick [the circuit clerk], and Mr. Hough's assistant were seated." Further describing Juror Collins's behavior during the course of the trial, petitioner's counsel wrote, "I also felt her obviously biased behavior against my client escalated when she became overly chummy with two male jurors seated to her left and right as I could see her actions starting to impact them as well in their body language as one would be giggling or laughing and the other one smiling while she was 'hamming' it up in the front row."

[6] The State Police led the investigation in this case and filed the criminal complaint against the petitioner.

3

The circuit court held a hearing on June 7, 2023, to consider the petitioner's post-trial motion. At the outset, the circuit court ruled that "Juror Collins, being the sister of the circuit clerk is not a per s[e] disqualification of Juror Collins sitting in this case. And to the extent that the defendant moved for a motion for a new trial based solely upon the fact that she is the sister of the circuit clerk, that motion is denied, and your exceptions are noted." The circuit court allowed the petitioner to call certain witnesses from her trial to testify, including Trooper R. P. Smith, the arresting officer, Brandy Sims, and Jennifer Godfrey.

The trial witnesses acknowledged that they knew Juror Collins, although they denied having a close relationship with her. Most of the testimony elicited by the petitioner from Trooper Smith focused on whether he knew Juror Collins's brother-in-law, Trooper Starsick, and whether he considered him to be an immediate family member of Juror Collins. Trooper Smith did acknowledge that four years prior, his daughter and Juror Collins's daughter were on the same basketball team that he coached. Brandy Sims testified that she knew Juror Collins because Juror Collins had been her summer schoolteacher when she was five years old and she "grew up not too far down the road" from her and her sister, Ms. Starsick. Ms. Sims acknowledged that she is a Facebook friend of Juror Collins but maintained that they had no other contact, testifying that she did not "know [Juror Collins] on a personal level." Jennifer Godfrey testified that she and Juror Collins had worked together three years ago at a Department of Health and Human Resources office outside of Gilmer County but that she did not know her beyond the

4

professional setting. The petitioner also presented testimony from Cason Jones, a Gilmer County Deputy Sheriff, who previously dated Juror Collins. He confirmed that Juror Collins had worked for a period of time in the Gilmer County Courthouse as a tax deputy beginning in 2014.[7]

During the hearing, the petitioner also sought to question Juror Collins and Juror Stewart. The circuit court would not allow the jurors to testify, telling the petitioner's counsel, "We're not going behind the jury verdict."

By order entered July 25, 2023, the circuit court denied the petitioner's post-trial motion, finding,

---

[7] It appears that the petitioner was seeking to use Deputy Jones's testimony to establish that the prosecutor must have known Juror Collins because she previously worked in the courthouse and he would have seen her in the tax office because he (the prosecutor) is a prominent landowner in the county. The petitioner presented no other evidence to support this claim. In his written response to the letter that petitioner's counsel sent to the trial judge after the trial concluded, the prosecutor stated:

> Ms. Collins is not a familiar person to me; we have no business, social or legal relationship. The Circuit Clerk has never mentioned Ms. Collins to me and I am unaware that these two have a continuing relationship—even though they are biological sisters. I also have no knowledge of Ms. Collins romantic or social liaisons with citizens of Gilmer County, and I could not tell you where she lives currently.

5

The W.Va. Trial Court Rules, Rule 606[8] prohibits calling a juror to testify in a post-verdict challenge . . . [t]he fact that a juror is [a] biological sister to the Circuit Clerk does not automatically disqualify that juror from serving on the jury . . . [and] [d]efense counsel's assertions that a juror, the circuit clerk, and the prosecutor lied are not supported by the facts and are spurious.

As noted above, the circuit court sentenced the petitioner in the same order. This appeal followed.

---

[8] There is no Trial Court Rule 606, nor any other applicable Trial Court Rule; presumably, the circuit court was referring to Rule 606 of the West Virginia Rules of Evidence, which provides, in relevant part:

> (b) *During an inquiry into the validity of a verdict or indictment.*
>
> > (1) *Prohibited testimony or other evidence.* – During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
> >
> > (2) *Exceptions.* – A juror may testify about whether:
> > (A) extraneous prejudicial information was improperly brought to the jury's attention;
> > (B) an outside influence was improperly brought to bear on any juror; or
> > (C) a mistake was made in entering the verdict on the verdict form.

6

## II. STANDARD OF REVIEW

The petitioner challenges the circuit court's denial of her motion for a new trial based upon juror misconduct. Generally,

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). This Court has explained that "[a] motion for a new trial on the ground of the misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it appears that defendant was not injured by the misconduct or influence complained of." Syl. Pt. 6, in part, *State v. Jenner*, 236 W. Va. 406, 780 S.E.2d 762 (2015). With these standards in mind, we consider the petitioner's assignment of error.

## III. DISCUSSION

The petitioner argues that she was denied a fair trial because at least one of the jurors was not impartial. Without question, "[a] criminal defendant is entitled to insist upon a jury 'composed of persons who have no interest in the case, have neither formed nor expressed any opinion, who are free from bias or prejudice, and stand indifferent in the case.'" *State v. Ashcraft*, 172 W. Va. 640, 647, 309 S.E.2d 600, 607 (1983) (quoting *State*

*v. McMillion*, 104 W. Va. 1, 8, 138 S.E. 732, 735 (1927) *overruled on other grounds State v. Harden*, 223 W. Va. 796, 679 S.E.2d 628 (2009)). As this Court has long recognized,

> [t]he right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14, of the West Virginia Constitution. A meaningful and effective voir dire of the jury panel is necessary to effectuate that fundamental right.

Syl. Pt. 4, *State v. Peacher*, 167 W. Va. 540, 280 S.E.2d 559 (1981).

Voir dire is the process that "allows both the litigants and the trial court to discover any bias or prejudice a jury may harbor." *State v. Derr*, 192 W. Va. 165, 174, 451 S.E.2d 731, 740 (1994). Indeed, "'[t]he official purpose[ ] of voir dire is to elicit information which will establish a basis for challenges for cause and to acquire information that will afford the parties an intelligent exercise of peremptory challenges.' Syl. Pt. 2, in part, *Michael v. Sabado*, 192 W.Va. 585, 453 S.E.2d 419 (1994)." Syl. Pt. 3, *State ex rel. Nationwide Mut. Ins. Co. v. Karl*, 222 W. Va. 326, 664 S.E.2d 667 (2008). Absent a fair jury, there is no fair trial. *State v. Stonestreet*, 112 W. Va. 668, 669, 166 S.E. 378, 379 (1932) (additional citation omitted). So, "a fair trial requires a meaningful and effective [v]oir dire examination." *W. Va. Human Rights Comm'n v. Tenpin Lounge, Inc.*, 158 W. Va. 349, 355, 211 S.E.2d 349, 353 (1975). The prospective jurors' truthfulness and candor consistent with their oath is the foundation to a meaningful and effective voir dire. *See People v. Hoffler*, 860 N.Y.S.2d 266, 271 (2008) ("The statutory requirement to administer an oath to insure that prospective jurors truthfully answer the questions posed to them

8

serves as a significant safeguard of a criminal defendant's fundamental constitutional right to a trial by an impartial jury."); *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) ("The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious."). When a meaningful and effective voir dire does not occur because a juror fails to disclose relevant information, a new trial may be required. *Belcher v. Dynamic Energy, Inc.*, 240 W. Va. 391, 400, 813 S.E.2d 44, 53 (2018).

This Court has held that:

> " 'A motion to set aside a verdict and grant a new trial on the ground that a juror subject to challenge for cause was a member of the jury which returned it, must be supported by proof that the juror was disqualified, that movant was diligent in his efforts to ascertain the disqualification and that prejudice or injustice resulted from the fact that said juror participated in finding and returning the verdict. Such facts must be established by proof submitted to the court in support of the motion, and not from evidence adduced before the jury upon the trial.' Syl., *Watkins v. The Baltimore and Ohio Railroad Company et al.*, 130 W. Va. 268[, 43 S.E.2d 219 (1947), *overruled on other grounds by* Syl. pt. 3*, Proudfoot v. Dan's Marine Service, Inc.,* 210 W. Va. 498, 558 S.E.2d 298 (2001)]." Syllabus point 2*, State v. Dean*, 134 W. Va. 257, 58 S.E.2d 860 (1950).

*Belcher*, 240 W. Va. at 394-95, 813 S.E.2d at 47-48, syl. pt. 5. In other words, "a new trial will be granted only when the prospective juror's willful or inadvertent failure, during voir dire, to disclose relevant information suggests actual or probable bias or prejudice, not merely because the complaining party has been, in effect, denied a peremptory strike of a particular prospective juror." *Id.*, 240 W. Va. at 400, 813 S.E.2d at 53 (quoting *McGlone v. Superior Trucking Co., Inc.*, 178 W. Va. 659, 669, 363 S.E.2d 736, 746 (1987)). We

9

have explained that "'[a]ctual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed.' Syllabus Point 5, *State v. Miller*, 197 W. Va. 588, 476 S.E.2d 535 (1996)." Syl. Pt. 1, *O'Dell v. Miller*, 211 W. Va. 285, 565 S.E.2d 407 (2002).

An allegation that a juror failed to disclose relevant information during voir dire requires a hearing if requested. As this Court held in syllabus point two of *Tenpin*:

> Upon an allegation before a trial court that a juror falsely answered a [m]aterial question on [v]oir dire, and where a request is made for a hearing to determine the truth or falsity of such allegation[,] it is reversible error for the trial court to refuse such hearing.

*Id.*, 158 W. Va. at 349-50, 211 S.E.2d at 350. This Court further held in *Tenpin* that "[i]f it be determined that a juror falsely answered a question on [v]oir dire examination, whether or not a new trial should be awarded is within the sound discretion of the trial court." *Id.*, 158 W. Va. at 350, 211 S.E.2d at 350, syl. pt. 3. Because a juror's failure to disclose relevant information may warrant a new trial, this Court indicated that "[i]n the exercise of its discretion . . . a trial court should, when requested, permit interrogation of the prospective juror to determine the truth or falsity of such answers and the relevancy thereof to the case under consideration." *Id.*, 158 W. Va. at 354-55, 211 S.E.2d. at 358.

Upon review, we find that the circuit court abused its discretion when it refused to allow the petitioner to question Juror Collins during the post-trial hearing. The

10

record shows that during voir dire, the State advised the potential jurors that it might call as witnesses Sergeant R. P. Smith with the West Virginia State Police, Brandy Sims, and Jennifer Godfrey. The potential jurors were then asked, "Are any of you related by blood or connected by marriage to any of those witnesses?" or "Close personal friends with any of those witnesses?" The questioning continued with, "Are any of you employed as any law enforcement officer, or any members of your immediate family, or have you been in the past?" All potential jurors answered "no" to these questions. Further, all jurors confirmed that they did not know of "any reason why [they] could not sit upon this jury and render a true verdict based upon the law and the evidence in this case." During the post-trial hearing, the petitioner was able to demonstrate through the testimony of the trial witnesses that Juror Collins was known by them, and that she had a connection to law enforcement because her brother-in-law is a member of the State Police. The State has argued that none of the testimony established that Juror Collins falsely answered the voir dire questions, contending with regard to the law enforcement question, that Juror Collins's response was truthful because a brother-in-law is not an immediate family member. While the trial witnesses' testimony did not conclusively prove that Juror Collins was untruthful, it clearly warranted further inquiry into Juror Collins's responses during voir dire, requiring her testimony during the post-trial hearing.

Even though the trial witnesses did not view themselves as close personal friends with Juror Collins, their perspective could not in itself be determinative as to Juror

11

Collins's ability to be an impartial juror. In that regard, we have explained that to establish juror disqualification, a party must

> "first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Postlewait v. City of Wheeling*, 231 W. Va. 1, 7, 743 S.E.2d 309, 315 (2012) (Davis, J., dissenting) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984)).

*Belcher*, 240 W. Va. at 400, 813 S.E.2d at 53. In addition, we have held that where possible disqualification is indicated, the juror "should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether [he or she] entertain[s] bias or prejudice for or against either party, requiring their excuse." Syl. Pt. 3, in part, *State v. Pratt*, 161 W. Va. 530, 244 S.E.2d 227 (1978). This Court has long recognized that "so much depends upon the manner of the juror and his [or her] tone of voice, and the opportunity of the trial judge to see and know the juror" when determining whether a juror should be disqualified. *State v. Toney*, 98 W. Va. 236, 241, 27 S.E.2d 35, 37 (1925). So, where possible presence of disqualifying bias or prejudice is indicated, "further probing into the facts and background related to such bias or prejudice is required." Syl. Pt. 4, in part, *O'Dell*, 211 W. Va. at 286, 565 S.E.2d at 408. This necessitates testimony from the juror subject to disqualification.

We recognize that none of the questions the potential jurors were asked necessarily required Juror Collins to disclose that her sister is the Circuit Clerk of Gilmer County. Moreover, the circuit court's finding that Juror Collins's sibling relationship with the circuit clerk was not a per se disqualification was not error. The petitioner has not pointed to any authority to support a finding that Juror Collins was automatically disqualified because of her sibling relationship with the circuit clerk and we know of none. Nevertheless, the record shows that the petitioner presented sufficient evidence to call into question the veracity of Juror Collins's responses to questions posed to her during voir dire regarding her relationships with other individuals involved in the case.[9] Certainly, "disclosure during the trial that a juror knows . . . a witness . . . is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict." *State v. Mills*, 221 W. Va. 283, 288, 654 S.E.2d 605, 610 (2007) (quoting *State v. Mayeux*, 949 So.2d 520, 533 (La.Ct.App.2007)). Therefore, the petitioner had the right to obtain testimony from Juror Collins to determine possible bias or prejudice arising from the relationships. *Pratt*, 161 W. Va. at 530, 244 S.E.2d at 228, syl. pt. 3. To

[9] As noted above, the State has argued that Juror Collins's answer to the question regarding whether she was related to a member of law enforcement was truthful, maintaining that a brother-in-law is not an "immediate" family member. We find it unnecessary to make any determination in that regard because Juror Collins's answers to the other questions posed to her necessitated her testimony during the post-trial hearing. Yet, we take this opportunity to remind circuit courts to be aware that terms such as "immediate family member" are subject to interpretation when not defined. Voir dire questions must be sufficiently precise to elicit the information necessary to determine whether bias or prejudice exists.

13

that end, the circuit court should have allowed the petitioner to question Juror Collins during the post-trial hearing.

The fact that the possible disqualifying bias or prejudice did not come to light until after the verdict was returned did not preclude Juror Collins's testimony, contrary to the finding of the circuit court. Like the *Tenpin* Court, "[w]e can perceive no valid reason for a trial court to refuse to follow through, even after verdict, to determine the truth or falsity of the jurors' [v]oir dire answers when such answers are brought into question. Only by this determination can the ultimate goal, a fair trial, be reached." *Id.*, 158 W. Va. 356, 211 S.E.2d at 353. To the extent that the circuit court relied upon West Virginia Rule of Evidence 606 to find that Juror Collins could not be questioned post-trial, it erred. Rule 606(b)(2)(B) provides that during an inquiry into the validity of a verdict, a juror may testify about whether "an outside influence was improperly brought to bear on any juror." Possible bias or prejudice falls within this exception to the general rule prohibiting juror testimony post-trial as set forth in Rule 606(b)(1).[10] *See Jenner*, 236 W. Va. at 419, 780 S.E.2d at 775 ("Rule 606(b) . . . expressly permits limited testimony from a juror on the issue of improper outside influence or prejudicial information."). Accordingly, the circuit

---

[10] *See* note 8, *supra*.

14

court abused its discretion when it refused to allow the petitioner to question Juror Collins during the post-trial hearing based on its overbroad view of Rule 606.[11]

The State has asserted that the petitioner was not diligent in attempting to discover any possible bias or prejudice because she only asked four additional questions during voir dire, none of which concerned any possible relationship between the jurors and individuals involved in the case or any connection the jurors had to law enforcement. The State further argues that the petitioner's failure to ask questions during voir dire designed to elicit the disqualifying information requires us to find that the petitioner did not exercise reasonable diligence to ascertain the disqualification as required by syllabus point five of *Belcher*. We have held:

> "[W]here there is a recognized statutory or common law basis for disqualification of a juror, a party must during voir dire avail himself of the opportunity to ask such disqualifying questions. Otherwise the party may be deemed not to have exercised reasonable diligence to ascertain the disqualification." Syl. Pt. 8*, State v. Bongalis*, 180 W. Va. 584, 378 S.E.2d 449 (1989).

Syl. Pt. 8, *Arnoldt v. Ashland Oil, Inc.*, 186 W. Va. 394, 412 S.E.2d 795 (1991). However, having carefully reviewed the record, we find no basis to conclude that the petitioner failed to exercise reasonable diligence. The necessary questions were asked, and negative responses were given. Any contradictory information responsive to the questions was

---

[11] Although the petitioner also sought to question Juror Stewart, she offered nothing more than mere speculation that he was biased against her. Accordingly, the circuit court did not abuse its discretion in refusing to allow the petitioner to question Juror Stewart.

hidden within the knowledge of the prospective juror at that point, and there was no additional inquiry to be made by the petitioner. *See Tenpin*, 158 W. Va. at 357, 211 S.E.2d at 354 (finding appellant satisfied the diligence requirement because necessary questions were asked during voir dire and appellant "could do no more"). In sum, by refusing to allow the petitioner to question Juror Collins during the hearing on her motion for a new trial, "the circuit court unduly restricted the petitioner's opportunity to prove h[er] claim of juror misconduct." *Jenner*, 236 W. Va. at 419, 780 S.E.2d at 775.

Having found that the circuit court abused its discretion by refusing to allow the petitioner to question Juror Collins during the post-trial hearing, we vacate the circuit court's July 25, 2023, order and remand this case for another hearing on the juror misconduct claim. *Id.* Upon remand, the circuit court is directed to permit the petitioner to subpoena and take the testimony of Juror Collins. The circuit court must then determine whether Juror Collins concealed any relevant information, and if so, whether the information she failed to disclose affected her impartiality and the fairness of the trial. While Juror Collins's testimony is necessary, the circuit court must consider the totality of the circumstances when determining whether she should have been excused for cause if the court finds that possible bias or prejudice existed. *See O'Dell*, 211 W. Va. at 286, 565 S.E.2d at 408, syl. pt. 3 ("When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and to resolve any doubts in favor of excusing the juror.").

If the evidence presented upon remand supports the circuit court's previous conclusion that no juror misconduct occurred, then the denial of petitioner's motion for a new trial should be reinstated. If, however, the circuit court finds clear and convincing evidence that juror misconduct occurred, then the circuit court must decide whether prejudice resulted, warranting a new trial.[12] *See Jenner*, 236 W. Va. at 420, 780 S.E.2d at 776 (conditionally affirming conviction subject to remand for hearing on juror misconduct issue).

## IV. CONCLUSION

For the reasons set forth above, we vacate the circuit court's July 25, 2023, order and remand this case for another hearing in accordance with the directions set forth herein.

Vacated and Remanded with Directions.

---

[12] The petitioner has argued that the remedy here is dismissal of the indictment because of prosecutorial misconduct. We decline to consider this argument because no prosecutorial misconduct was demonstrated in the record.

17